IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

IN RE:                              )
                                    )    Chapter 7
DOYLENE K. ROBERTS,                 )
                                    )    Bankruptcy No. 09-00583
         Debtor.                    )

**RULING ON TRUSTEE'S OBJECTION TO DEBTOR'S
CLAIM OF HOMESTEAD EXEMPTION**

This matter came before the Court on Trustee's Objection to Debtor's Claim of Homestead Exemption.   The Court held an evidentiary hearing on August 25, 2010.   Attorney Abbe Stensland appeared for Chapter 7 Trustee Renee Hanrahan.   Attorney Steven Klesner appeared for Debtor Doylene Roberts.   This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

**STATEMENT OF THE CASE**

Debtor claims her interest in a marital home in Newport Beach, California (hereinafter "Newport Beach") as exempt under Iowa homestead law.   The Trustee objects to Debtor's claim of exemption.   The Trustee argues Debtor cannot claim the homestead exemption because she abandoned her homestead under Iowa law.   Trustee also belatedly has argued that Debtor was not entitled to use the Iowa homestead exemption extraterritorially for California property.   After hearing the arguments and evidence, the Court overrules all the Trustee's arguments and finds Debtor has not abandoned her homestead and is entitled to the Iowa homestead exemption.

### FINDINGS OF FACT

In 1982, Debtor married Thomas Hogan.   In 1987, the couple bought a home in Newport Beach, California.   That home is the subject of the dispute in this case.   From 1987 through 1991, they treated the home as an investment property.   They lived between the East and West coasts during those years.   In 1991, Debtor moved into the Newport Beach property as her primary residence.   She lived there continuously until 2004 when she and Hogan began divorce proceedings.

For a good part of their marital life, Debtor and Hogan lived primarily in separate locations. When Debtor moved into the Newport Beach residence as her primary dwelling place in 1991, Hogan was living in Virginia.   He lived in Virginia continuously until the year 2000.   At that time, he was experiencing a number of difficulties in his life.   Debtor paid for him to return to live in California.   From 1991 through 2000, in spite of living primarily in separate places, Debtor and Hogan saw each other regularly on weekends and during other periods of time.

After Hogan returned to California, Debtor purchased another property with her mother in Alta Loma, California.   Debtor split her time between the Newport Beach residence and the Alta Loma residence for the next few years until her mother passed away.   After her mother passed away, Debtor sold the Alta Loma residence.   Debtor and her sister then acquired another property in Devore, California.   Debtor again split her time between that property in Devore and Newport Beach where Hogan was then living fulltime.

In 2004, a number of major events transpired.   In April 2004, Debtor was asked to attend a meeting with Hogan and his therapist.   At that meeting, Hogan's therapist told Debtor that Hogan was "moving on" and that she should consider doing the same.

Following the meeting, Debtor called a lawyer and began to consider her options.   In May of 2004, she filed for a preliminary separation – the first step in a California dissolution of marriage.   In July of 2004, Debtor and Hogan met for dinner.   He told her that he had a girlfriend who was pregnant with his child.   He also told her that he intended to have the girlfriend move in with him in Newport Beach.   He disclosed that, in addition to the personal problems he had, he had also gotten himself into criminal trouble.   He told her he had been charged with and pled guilty to bank fraud.   As part of his sentence, he disclosed that he would be immediately starting a period of home confinement at the Newport Beach property.

Debtor was devastated but immediately took several actions.   Before leaving the dinner, she took her credit card that Hogan had been using.   She then left and made immediate plans to move all of her things out of the Newport Beach residence.   In the next few days, she arranged to visit the house and get her belongings.   At the house, she encountered Hogan who was very upset and saying "crazy" things.   They both made accusations about what transpired, including Hogan claiming that Debtor had hit him.   She left the residence and has never returned.

As soon as she left, she called Hogan's therapist to report that Hogan was in a highly disturbed state.   She also called her attorney who told her to "get out of there and not to go back." In the following days, Debtor and Hogan entered into a voluntary restraining order where they mutually agreed to several things, including to stay away from each other.   They agreed Hogan would get temporary exclusive use and control of the Newport Beach address.   Debtor would have temporary exclusive use and control of the Devore address.

In August of 2004, Debtor moved into the Devore property as her primary residence.   She remained there until she sold it in 2006.   After she left Devore, she moved to West Branch, Iowa

3

to be closer to her nephew.    After she sold the Devore property and paid the mortgage, there were

no net proceeds to split with anyone.    She has been living as a renter in West Branch, Iowa on a

very limited income since that time.

When Debtor originally filed bankruptcy, she did not list the Newport Beach property as

her homestead.    She claimed no homestead exemption.    She and her counsel both have stated that

her intent at the time was to sell the Newport Beach property which they believed would allow her

to pay creditors in full.    They expected additional proceeds would be available for Ms. Roberts

after all creditors were paid.

The plans of Debtor and her counsel changed during the bankruptcy in response to actions

taken by the Trustee.    The Trustee negotiated an agreement that proposed to sell the Newport

Beach property to Hogan for approximately $400,000.    Trustee moved for Court approval of the

agreement.    Debtor objected to the proposed sale as substantially undervalued.    She pointed out

that two previous appraisals, both done by an appraiser selected by Hogan, had shown the property

to be worth three or four times that amount.    The first appraisal valued the property at $1.6

million.    The second appraisal, which she said properly reflected the decline in real estate values

in California, valued the property at $1.2 million.    Debtor has repeatedly stated that Trustee's

proposal to sell the property for $400,000 was unfair and unacceptable.    In response to what she

perceived to be a very low proposed sale price, she and her counsel amended her bankruptcy

papers and listed the Newport Beach property as exempt under the Iowa homestead exemption.

She believed the amendment was the only way to ensure she will receive her fair share if the

Trustee sells the home below the value she believes is fair.

Debtor testified that she would love to be able to live in the Newport Beach property again. She said there were several practical reasons she is not able to do so.   However, she specifically testified that "living there again would be the greatest thing in the world."

Debtor believes she made a great purchase when she picked out the Newport Beach house many years ago.   She, not Hogan, covered every expense that went into the house.   She has never received anything from Hogan in return—not any rent or any payment whatsoever.   She pointed out that Hogan, his girlfriend, and their new family continued to live there.   She also pointed out that the restraining order/mutual agreement remains in effect and that she has never even been allowed to go back into the property.   She had asked for authority to do so several times.   Hogan always had reasons to put her off.   Debtor would very much like to return to the house.   She said given her attachment to the house, and all she put into it, the only reasonable approach left is for her to claim the proceeds of any sale of the homestead as exempt.

Hogan did not testify or appear at the hearing.   A proposed affidavit of his testimony was prepared by his California divorce counsel.   The Trustee did not attempt to offer it at the hearing.[1]

## PARTIES' ARGUMENTS

After Debtor amended her bankruptcy filings to assert the Iowa homestead exemption, Trustee filed a timely objection.   Trustee argued Debtor was not entitled the Iowa homestead exemption because she had abandoned the Newport Beach property as her homestead.   The Court scheduled an evidentiary hearing on August 25, 2010 to address that objection and Debtor's response.

---

[1] Even if offered, it is doubtful it would have been admitted.   There appeared to be several evidentiary rules — including hearsay rules — prohibiting its admission.

During opening statements and throughout the presentation of testimony, the parties focused on whether Debtor had abandoned the Newport Beach property as her homestead. The Court then heard extensive post-hearing arguments. At the end of those arguments, Trustee noted, for the first time, that she had been researching and intended to brief another issue — whether Debtor could claim California property exempt under the Iowa homestead exemption. The Trustee disclosed that she might argue that Iowa homestead law does not have "extraterritorial" reach and thus could not apply to California property. The Court ordered simultaneous post-hearing briefs from both parties. Trustee made arguments on both abandonment and extraterritorial reach.

The Court will first address the threshold question of whether the Trustee has properly raised or persuasively argued that Iowa homestead law cannot apply in an "extraterritorial" manner to property in Newport Beach, California. The Court will then next address whether, under the facts applicable to this case, Debtor has abandoned her homestead.

## CONCLUSIONS OF LAW

The issues in this case arise under, and at the intersection of, the exemption provisions of federal bankruptcy law and Iowa law. The beginning point of the analysis is 11 U.S.C. § 522(b)(3)(A). That section permits a debtor to exempt from the bankruptcy estate:

> . . . any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of filing of the petition at the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition, or if the debtor's domicile has not been located at a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days

6

> immediately preceding the 730-day period or for a longer portion of
> such 180-day period than in any other place . . .

Id.  Iowa is an "opt-out" State, which means Iowa has elected to have its exemptions apply in

Federal Bankruptcy proceedings as specifically allowed by the Bankruptcy Code.   In re Hurd, ___

B.R. ___, 2010 WL 5093664, at *2 (B.A.P. 8th Cir. Dec. 15, 2010); Iowa Code § 627.10.   There is

no dispute that Debtor resided in Iowa during the 730-day period before filing bankruptcy.   Iowa

exemption law applies.   The question is the effect of Iowa exemption law in these proceedings.

Under the applicable Bankruptcy Rules, when a debtor claims an exemption, the trustee or

any interested party must object or the exemption will be deemed approved by operation of law.

In re Meyer, 392 B.R. 416, 419 (Bankr. N.D. Iowa 2008) (citing Fed. R. Bankr. P. 4003(c)) (other

citation omitted).   Under this rule, the Trustee has the burden of proving Debtor's exemptions are

not properly claimed.   Id.; see also Hurd, 2010 WL 5093664, at *2.

The Iowa homestead exemption has been broadly interpreted with a focus on its protective

purpose.   As this Court noted in Meyer:

> In this state, homestead statutes are broadly and liberally construed
> in favor of exemption.   Regard should be had to the spirit of the law
> rather than its strict letter.   The homestead exemption is not for the
> benefit of the husband or wife alone, but for the family of which
> they are a part. The policy of our law is to jealously safeguard
> homestead rights.

392 B.R. at 419 (quoting In re Matter of Bly, 456 N.W.2d 195, 199 (Iowa 1990)).   "The purpose

of homestead laws is to promote the stability and welfare of the state by encouraging property

ownership and independence on the part of the citizen . . . ".   Id. (cited and quoted sources

omitted).   The Iowa homestead exemption is to be interpreted "to secure the benevolent purposes

of the homestead laws and to be construed broadly and liberally in favor of the beneficiaries of the

legislation." Id. (quoting In re Estate of Tolson, 690 N.W.2d 680, 682 (Iowa 2005)).   With those

principles in mind, the Court turns to the specific questions presented here.

1.      Extraterritorial Effect of Iowa Homestead Exemption

Trustee did not raise the "extraterritorial" argument in her objection to Debtor's claim of

homestead exemption.   Trustee did not identify it as an issue before the hearing.   Trustee did not

raise it in her opening statement.   In fact, the Trustee did not raise it until the very end of her final

argument at the hearing.   Then she mentioned only that she had researched the issue and intended

to brief it.

The Court concludes the Trustee did not timely or appropriately raise the issue of the

extraterritorial effect of Iowa law on Debtor's claim of exemption.   Objections must be raised in a

timely manner so they can be addressed fully and fairly at the hearing on exemptions.   The

Trustee, at most, raised it as an issue she wanted to further consider and make argument on—for

the first time—in post-hearing briefing.   This is not sufficient to timely raise the issue.

Here, the Trustee had 30 days from Debtor's amendment of bankruptcy schedules to object

to the exemption claim.   Taylor v. Freeland & Kronz, 503 U.S. 638, 642-44 (1992); Fed. R.

Bankr. P. 4003(b).   While the Trustee made a timely objection, she asserted only abandonment of

the homestead as the basis for the exemption.   Asserting a new argument at the end of the

hearing—well beyond the 30-day objection limit—is not permissible.   The United States

Supreme Court has interpreted the 30-day period in Rule 4003(b) very strictly.   Taylor, 503 U.S.

at 642-44 (challenge to exemption outside of 30-day period in Rule 4003(b) disallowed even

though debtor had no colorable basis for asserting claim of exemption).

8

Even if the Court were to find the argument was properly raised, however, the Court would conclude that the current version of the Iowa homestead exemption allows for extraterritorial effect.   The Trustee bases her argument against extraterritorial effect mainly on an Iowa Supreme Court case from 1882 and an unpublished 2003 decision from the United States Bankruptcy Court for the Southern District of Iowa.   The Iowa Supreme Court case held that "the laws of each state .  .  . apply only to homesteads acquired and held under its own laws and within its territorial jurisdiction.   The laws of neither state can have any extraterritorial force or application."   Rogers v. Raisor, 14 N.W. 317, 318 (Iowa 1882).   The unpublished 2003 decision from the United States Bankruptcy Court for the Southern District of Iowa relied on Rogers to hold that debtors could not use the Iowa homestead exemption for property located in the State of Nebraska.   In re Bausback, 2003 WL 25932295, at *4 (Bankr. S.D. Iowa June 3, 2003) (citing and quoting Rogers v. Raisor). The Southern District concluded:   "The Iowa Supreme Court has long since decided that the homestead exemption law is not extraterritorial."   Bausback, 2003 WL 25932295, at *3 (citing Rogers v. Raisor, 14 N.W. at 318).

Several cases decided after Bausback (and long after Rogers) have addressed this and related issues and have reached the opposite conclusion.   The most significant of these is the ruling from the United States Court of Appeals for the Eighth Circuit in In re Drenttel, 403 F.3d 611 (8th Cir. 2005).   That case significantly altered the analysis of the reach of state homestead exemptions in the context of Federal Bankruptcy law.   Id. at 614.   In Drenttel, the debtors moved from Minnesota to Arizona.   Within a month, they purchased a home.   They then filed a chapter 7 petition in Minnesota.   They claimed Minnesota exemptions on their petition.   The chapter 7 trustee objected to the debtors' attempt to claim the Minnesota homestead exemption.   The

9

Trustee argued that "states traditionally do not give extraterritorial effect to statutes relating to the

ownership of real property." Id. at 613.   The Trustee also argued that Minnesota's choice of law

rules would mean Arizona, not Minnesota, exemptions applied.

The Court noted trustee's argument was "based on state interpretation of state law and may

not apply with equal force in the context of a federal statute. Traditional concerns respecting the

dignity and sovereignty of other states and limiting jurisdiction to the state borders are simply

inconsistent with the national effect and supremacy of federal law." Id. n.1.   "References to state

exemption statutes do not invoke the entire law of the state. Instead, Congress used state-defined

exemptions as part of a federal bankruptcy scheme, while limiting the application of state policies

that impair those exemptions." Id. at 614.   The Eighth Circuit then decided the issue by looking to

the language of the Minnesota exemption statute to determine whether the exemption could be

applied to a homestead located in Arizona.   Id.   The Court concluded the language of the statute

did not preclude the use of Minnesota's homestead exemption for property located outside

Minnesota.   The Court also found that permitting the exemption was consistent with Minnesota's

rule of liberal construction of homestead law in favor of the debtor.   The Court thus allowed the

exemption to apply to the debtors' Arizona homestead.   Id. at 615.

A bankruptcy court within the Eighth Circuit specifically addressed the extraterritorial

effect of the Iowa homestead exemption after Drentell.   In re Williams, 369 B.R. 470 (Bankr.

W.D. Ark. 2007).   The court first found that under § 522 the debtor was required to use Iowa

exemptions in their bankruptcy.   Id. at 474 case.   The court acknowledged that the Rogers v.

Raisor case from 1882 appeared to address the extraterritorial force or application of Iowa

homestead exemption law.   The court in Williams concluded, however, that in the context of

10

Federal Bankruptcy law, as interpreted in <u>Drenttel</u>, the Iowa homestead exemption could be applied extraterritorially.   <u>Id.</u> at 476.   The Court engaged in an extensive analysis of <u>Drentell</u> and its dispositive effect.   The court also found the current version of the Iowa homestead exemption statute is not "territorial" on its face and that permitting use of the homestead exemption to cover a homestead outside of Iowa was consistent with Iowa's liberal interpretation of its homestead laws. The court concluded that "Iowa's homestead exemption is available to the debtors as a matter of Federal law."   <u>Id.</u> at 476.   Therefore, the court overruled the Trustee's objection, applying the Iowa exemption to the debtor's Arkansas residence.

The Tenth Circuit Bankruptcy Appellate Panel also recently addressed this exact issue. <u>Stephens v. Holbrook</u>, 402 B.R. 1 (B.A.P. 10th Cir. 2009).   The Tenth Circuit B.A.P. interpreted Iowa law and concluded Iowa's homestead exemption applied to a debtor who filed bankruptcy in Oklahoma.   <u>Id.</u> at 8.   The Bankruptcy Appellate Panel first pointed out that the language of the current version of the Iowa Code was different than the 1882 version the <u>Rogers</u> case interpreted. There was no language in the older version of the Iowa Code addressing what parts of the exemption, if any, were limited to Iowa residents.   However, the newer version of the Code specifies when exemptions are limited to Iowa residents and Iowa property.   <u>Id.</u>   The current exemption for personal property in Iowa is, by specific statutory language, available only to residents of Iowa.   <u>Id.</u>   However, the Iowa homestead exemption used to be, but currently is not, limited in the same fashion.   <u>Id.</u>   The Court noted the legislature appears to have made a choice not to restrict the homestead exemption.   The Court noted that a "basic principle of statutory construction is that where the legislature includes specific language in one provision and omits it in another, that it acted intentionally with respect to the omission."   <u>Id.</u> at 7.

11

The Tenth Circuit B.A.P. then applied those principles to conclude that the Iowa homestead exemption contained no residency requirements and that under a similar analysis there was no specific requirement that the real property involved in the homestead analysis be located in Iowa.   Id. at 8.   "In applying the methodology described above, we conclude that Iowa's homestead exemption can be applied to real property (or here proceeds) located outside of the state."   Id. at 8.   "[B]ecause Iowa's homestead exemption law is silent as to its availability under these facts and there appears to be no case law directly on point that addresses the current version of the homestead exemption, the statute should be given extraterritorial effect."   Id.   The B.A.P. then concluded by noting that it was providing a liberal interpretation to Iowa's exemption laws and "the well settled principle that the homestead right in Iowa is particularly favored".   Id. (citing and quoting Meyer, 392 B.R. at 419 – J. Kilburg).

The same analysis used by the courts above—particularly Drenttel—applies here.   The decision in Rogers v. Raiser and other Iowa cases following it, were based on traditional considerations of comity and limiting of one state's jurisdiction at its borders.   Under Drenttel, those considerations are not applicable to this federal bankruptcy decision.   The Rogers case is further distinguishable given the changes in statutory language and the legislative intent demonstrated since Rogers.

Under the analysis of the Iowa homestead statute provided for by Drenttel and other recent cases, the Court concludes the Iowa homestead exemption can apply extraterritorially.   The plain language of the statute provides no territorial limit.   The policies governing interpretation of the statute require that it be given a broad reach to further its protective purposes.   Allowing the statute to have extraterritorial reach furthers those purposes.   See Drenttel, 403 F.3d at 615.

12

2.      <u>Abandonment of Homestead</u>

The issue the Trustee properly raised and the parties addressed at hearing is whether

Debtor abandoned her homestead under Iowa law.   "Whether the homestead has been abandoned

is largely a matter of intent to be determined on the particular facts of each case."   <u>Charter v.</u>

<u>Thomas</u>, 292 N.W. 842, 843 (Iowa 1940) (citing <u>Schaffer v. Campbell</u>, 199 N.W. 334 (Iowa

1924).   "The question is one of intention and that must usually be determined from the testimony

of the parties in light of the surrounding circumstances."   <u>Charter</u>, 292 N.W. at 843 (citing

<u>Citizens Bank of Milo v. Frank</u>, 235 N.W. 30 (Iowa 1931)).   When a party is actually removed

from the alleged homestead, "it becomes incumbent upon him to show that he did not intend a

permanent abandonment of his homestead."   <u>Illinois Oldsmobile Co. v. Miller</u>, 202 N.W. 751,

752 (Iowa 1925).   The party must show "a continued and fixed purpose to return, and such fact

may be established by his own testimony as to his own intent."   <u>Id.</u>   The Iowa Supreme Court

continued: "manifestly this rule of evidence is a very liberal one toward the homestead claimant

and so it is intended to be."   <u>Id.</u>   The question of a homestead residence is one that provides the

claimant of the homestead protection a very broad option and that the law is "very liberal in

permitting him to make his own choice."   <u>Id.</u>   The Iowa Supreme Court also noted "we have said

that 'equity will not draw very fine sights, when dealing with homestead questions'."   <u>Id.</u>

(quoting <u>Lutz v. Ristine</u>, 112 N.W. 818, 819 (Iowa 1907)).

"Once the homestead character has attached, the owner may remove therefrom and the

homestead character is preserved as long as he has an intention to return."   <u>In re McClain's Estate</u>,

262 N.W. 666, 669 (Iowa 1935).   "In other words, intention to occupy in the future, while

insufficient to establish a homestead originally, is sufficient to continue a homestead previously

established." Id. at 669-70. "The authorities recognize the presumption in favor of the continuance of the homestead." Id. "All presumptions are in favor of preservation and retention of the homestead." Id. The Iowa courts further note that "so strong is the presumption that the majority of courts hold that where the homestead character has attached to property, it can only be lost by waiver or abandonment by the owner." Id. at 670.

The Iowa Supreme Court has long held that the amount of time away from the homestead is not dispositive of an issue of abandonment. Fyffe v. Beers, 18 Iowa 4 (Iowa 1864). The length of time that plaintiff has been absent from the homestead is entitled to consideration but is not conclusive. Shaffer, 199 N.W. at 337. The same case recognized that "long-continued absence from a homestead may raise a presumption of abandonment, but such presumption is not conclusive. The presumption in that case was overcome by the evidence." Id. at 337. Even an absence of seven years from an alleged homestead is not dispositive and was deemed overcome by the evidence that the parties claiming the homestead kept household goods there and entertained the intention of returning. Repenn v. Davis & Others, 34 N.W. 326 (Iowa 1887).

The Iowa courts have decided a number of cases similar to this one and applied these principles and presumptions that guide interpretation of the question of abandonment. The first case, decided by the Iowa Supreme Court in 1925, is virtually dispositive. Novotny v. Horecka, 206 N.W. 110 (Iowa 1925). The case involved a claim of homestead rights by a wife forced from her homestead by divorce and restraining order. Id. at 110-111. The court made the following observation that applies with equal force here:

> It is claimed that plaintiff lost her homestead rights by her own nonoccupancy. The evidence is clear that the plaintiff occupied the property, claiming it as her home until the restraining order of March, 1919, was made, and that the order

14

> procured by the husband was very naturally understood by the plaintiff as evicting
> her from her own home.

Id. at 111.   After the divorce was finalized, she was given the home and the care of the children.

Id.   After reciting those facts, the court made another observation that is equally applicable here.

> Up to this time she was justified in assuming that she had no authority to enter or
> take possession of the home. Her absence up to this time was not voluntary.
> Although she does not say in so many words that she always intended to retain her
> homestead rights notwithstanding her absence, she could not be expected, in view
> of the charges which her husband was making against her, and in view of the
> restraining order and the decree and the later proceedings, to do any more than she
> did. She was driven from her home by her husband. So driven, she lost none of her
> rights; forfeited none of her immunities or privileges as a wife. She retained her
> homestead rights to the same extent as if she had remained in the household and had
> continued to reside with her husband.

Id. at 111-12 (numerous cited sources omitted).   The court concluded by reiterating that its

decision is "in accord with the general rule that abandonment, to be of any avail to one seeking to

take advantage of it, must be voluntary."   Id. at 112 (numerous citations omitted).   The court also

noted that there is no equitable argument for compelling the wife to give up any of her homestead

rights by her forced displacement from the home.   Id.

Another case, decided in 1889, made clear that being forced to leave a homestead because

of unpleasant relations with another party living in the home does not constitute an abandonment

in the first instance.   Woolcut v. Lerdell, 43 N.W. 609 (Iowa 1889).   In Woolcut, Defendants

were living with their son on his land at the time of his death and title to the land passed to them.

Id. at 609.   They continued to live on the land under an arrangement with the plaintiff where he

would provide a home and support to the defendants until they died and then he was to have the

land.   Id.   The agreement eventually fell apart.   Id. at 609-10.   The plaintiff and defendants

continued to live on the land until it became unbearable:

15

> They left the premises in November, 1886, but it was because of unfriendly
> relations between the plaintiff's family and them, and not from a desire or purpose
> to abandon the premises as a home, but merely as a present expedient.

Id. at 611.   The court concluded that defendants did not abandon or lose their homestead rights.

Id.

Another case, decided in 1924, also involves a divorce, displacement from the homestead, and the question of abandonment.   Schaffer v. Campbell, 199 N.W. 334 (Iowa 1924).   In that case, a couple was married in 1904 and bought a house in Lehigh, Iowa in 1907.   Id. at 335.   The couple later moved to Fort Dodge but kept the Lehigh property, and according to the wife intended to return if conditions warranted.   Id.   The couple divorced before they returned to Lehigh.   A creditor of the husband asserted a claim against an interest in the Lehigh property the wife received in the divorce.   The creditor argued that leaving the Lehigh residence and occupying the Fort Dodge residence effectively abandoned the Lehigh homestead.   Id. at 336.   The court noted that the fact the couple left the Lehigh residence, spent substantial time away from the residence, and the eventual divorce while living in Fort Dodge were not dispositive facts.   Id. at 337.   The court noted: "Loss of homestead exemption is not favored."   Id. at 338.   The court also noted:   "In order to constitute an abandonment of the homestead the removal must be voluntary and not under compulsion of any kind."   Id.   "An abandonment is not occasioned by a removal or temporary absence caused by some casualty or necessity if there is an intention of return as soon as circumstances will permit."   Id.   The court held the testimony of the wife was virtually dispositive.   She indicated that she intended to return to the Lehigh property when circumstances allowed and never intended to abandon her Lehigh homestead when she left.   The Court affirmed the trial court's finding of no abandonment.   Id.

16

The Court finds that under the testimony given and the applicable case law, Debtor did not abandon the Newport Beach property as a homestead.   She noted that her removal from the homestead was forced by circumstances beyond her control.   She was compelled by unpleasantness and then operation of law (the temporary restraining order) to be away from the property.   She noted her desire to return.   She noted that the only reason she would not occupy it as a homestead if given the opportunity again were the "practical" circumstances that resulted in divorce.   She specifically expressed a desire to return and live there if it would be possible.   Her simple conclusion that it is not currently possible to return does not abandon the homestead.

The Trustee has also argued that the fact that Debtor is willing to sell the homestead demonstrates her lack of desire and intent to return.   "An offer to sell homestead property is not necessarily inconsistent with an intention to return and reoccupy the property as a home if not sold."   Id. (citing Vittengl v. Vittengl, 135 N.W. 63 (Iowa 1912)).   In Vittengl, the court noted that the debtor "had as much right to exchange it [the non-occupied homestead] at that time for a new homestead or to sell it with intent to purchase a new homestead, as though she were in the actual occupancy."   135 N.W. at 65.   The case also went on to point out that the question, at such a point "must usually be one of fact."   Id.   The court concludes that Debtor's testimony that she would be willing to sell the property does not establish an intent to abandon the homestead.


## CONCLUSION

For the reasons stated above, the Court determines that Trustee's Objection to Debtor's claim of a homestead exemption under Iowa homestead law should be overruled.


17

**WHEREFORE**, Trustee's Objection to Debtors Claim of Homestead Exemption is

OVERRULED.

Dated and Entered:
December 29, 2010

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE

18